# IN THE UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF ILLINOIS
# SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BONNIE PRATT and ROOSEVELT PRATT, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. 08-3144 |
| JUDY McANARNEY, OFFICE OF THE COMPTROLLER, STATE OF ILLINOIS, KARLA GRIGSBY, OFFICE OF THE COMPTROLLER, STATE OF ILLINOIS, and JEROME KING, | ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

## OPINION

JEANNE E. SCOTT, U.S. District Judge:

This matter is before the Court on three separate Motions filed by Defendants: (1) Defendants Judy McAnarney's and Karla Grigsby's Motion to Dismiss (d/e 10); (2) Defendant Jerome King's Motion to Dismiss Counts IX and X of Plaintiffs' Amended Complaint (d/e 14); and (3) Defendant McAnarney's Motion to Strike (d/e 12). For the reasons stated below, all three Motions are allowed.

1

## FACTS

According to the Amended Complaint (d/e 4), Plaintiffs Bonnie and Roosevelt Pratt are a married couple living in Springfield, Illinois.[1]  Bonnie worked at the Illinois Office of the Comptroller until she was terminated July 6, 2007.  The Pratts have brought suit against two of Bonnie's former co-workers and the fiancé of one of these former colleagues.  Defendant McAnarney was a Director of Human Resources and Administrator in the Office of the Comptroller.  Defendant Grigsby was Bonnie's supervisor at the Office of the Comptroller.  Defendant Jerome King was a police officer with the Supreme Court of Illinois and Grigsby's fiancé.

On or about February 20, 2007, Bonnie learned from a co-worker at the Office of the Comptroller that sensitive personnel and agency documents were accessible to all office employees through an internal agency computer system, the Human Resources "O" drive.  Bonnie sent an email to McAnarney to inform her of the sensitive materials on the "O" drive and to warn her that their accessibility could violate privacy and confidentiality laws and policies. After McAnarney received Bonnie's email,

---

[1] Unless otherwise noted, all facts are taken from the allegations in the Amended Complaint.

she allegedly confronted Bonnie in a hostile manner and demanded to know how Bonnie had accessed them. When Bonnie showed her, McAnarney accused Bonnie of placing the documents on the "O" drive herself to create intra-office conflict.

The next day, at McAnarney's direction, another Office of the Comptroller employee, Miguel Calderon, called Bonnie and asked her to explain how to access the documents on the "O" drive. Bonnie did, but Calderon could not find the same documents Bonnie had. He called her twice more that day while she was engaged in other work and left messages accusing her of failing to perform her official duties.

On February 22, 2007, McAnarney, Calderon, and Labor Liaison John Dill again asked her to demonstrate how the sensitive documents could be accessed. After she did, they asked her how she learned of the documents. Bonnie refused to reveal the identity of the co-worker who had told her about the documents because she was afraid that this person would get in trouble and receive the same hostile treatment from management that Bonnie was receiving.

Dill questioned Bonnie again on February 23 and 27, 2007. He told her that if she persisted in refusing to reveal the identity of the co-worker

3

who informed her of the accessible documents, she could be terminated. On February 27, 2007, after Dill showed Bonnie a document stating that Human Resources would take no disciplinary action against anyone she revealed, Bonnie told him that Alice Kern was the individual who had informed her of the accessible documents.

More than a week later, on March 8, 2007, Bonnie attended a meeting with McAnarney, Grigsby, Dill, and others. She learned that Human Resources had decided to take formal disciplinary action against her. McAnarney presented Bonnie with a document titled "Oral Warning" accusing Bonnie of insubordination and misrepresentation. <u>Amended Complaint</u>, § 23.

Throughout this period of time, Bonnie suffered emotional, physical, and mental distress and began experiencing anxiety attacks. On March 9, 2007, her primary care physician referred her to a Dr. Forsyth for mental health treatment. Dr. Forsyth ordered her to take time off work. On April 16, 2007, Bonnie returned to work part-time. That day, Grigsby presented Bonnie with her 2006 evaluation, which contained many negative comments regarding Bonnie's behavior. Bonnie complained that these criticisms were surprising, and Grigsby became hostile and defensive.

After Bonnie left work that day, she had another anxiety attack and visited Dr. Forsyth. He directed her to take at least two additional weeks of medical leave and placed her on anti-depressant medication. On April 30, 2007, Dr. Forsyth directed that Bonnie extend her medical leave until June 11, 2007. On June 20, 2007, however, Bonnie received a denial from the Office of the Comptroller of her doctor's request for an extension of leave to June 11, 1007. The letter directed her to return to work July 2, 2007, with a medical release showing that she was fit for full-time duty or to face termination.

Dr. Forsyth refused Bonnie's request for a medical release; in his opinion, she was not fit to resume her duties. On June 29, 2007, Dr. Forsyth faxed a letter with his opinion to the Human Resources Division of the Office of the Comptroller. On June 29, 2007, Bonnie received a letter from McAnarney and Grigsby informing her that she was expected back at work on July 2, 2007. Bonnie responded with a letter stating that she was not well enough to return to work and lacked a release from her doctor. On July 6, 2007, Bonnie received a letter from McAnarney stating that Bonnie had abandoned her job and therefore was terminated. Bonnie's union then filed a grievance.

Throughout this period, Roosevelt owned a Springfield store known as Fashion Afrique. On August 7, 2007, a man later identified as King, entered the store and asked Roosevelt if he knew Defendant Grigsby. King told Roosevelt that he heard that Roosevelt had threatened Grigsby, and King then threatened Roosevelt with physical violence for having bothered her and prevented Roosevelt from leaving his own store. King was wearing a law enforcement uniform throughout this confrontation, and Roosevelt thought he was a member of the United States Marshal's Office.

After King left Roosevelt's store, Roosevelt immediately called 911 to report the incident. Operators transferred his call to the United States Marshal's Office, which sent deputies out to take Roosevelt's statement and investigate. On August 14, 2007, a member of the United States Marshal's Office told Roosevelt they had identified King as the man who came to his store.

Three days later, Roosevelt got a five-minute phone message containing the sounds of a gun being fired repeatedly then reloaded and fired again. The Pratts believe King was the individual who left the phone message. Roosevelt feared for his life and safety and suffered mental and emotional anguish.

The Pratts have filed a 10-count Amended Complaint in which they allege:

> This action arises under 42 U.S.C. § 1983 to address the deprivation under color of state law of the rights, privileges and immunities secured by the constitution of the United States pursuant to the Fourteenth Amendment under the Americans with Disabilities Act of 1990 Section 2 et seq., 42 U.S.C. § 12101 et seq. and Civil Rights Act of 1968 § 804(f)(2), 42 U.S.C. § 3604 (f)(2), and 29 U.S.C. § 215(a)(3) (Retaliation).

<u>Amended Complaint</u>, § 1.  Counts I-VIII are claims by Bonnie against McAnarney.  Counts IX and X are claims by both Bonnie and Roosevelt against Grigsby and King.

In Count I (headed "28 U.S.C. § 1983"), Bonnie alleges that McAnarney acted under color of state law in depriving her of her First Amendment and other constitutional rights.  In Count II (headed "Punitive Damages -- 28 U.S.C. § 1983"), Bonnie alleges that McAnarney acted out of evil intent or callous indifference to Bonnie's rights and thus prays for punitive damages.  In Count III (headed "American Disabilities Claim"), Bonnie alleges that McAnarney knew she was suffering from severe depression but either took no steps to reasonably accommodate her disability or intentionally discriminated against her because of her disability.  In Count IV (headed "American Disabilities Claim Punitive Damages"),

Bonnie claims that McAnarney acted through evil intent or callous indifference to her federally protected rights and, thus she is entitled to punitive damages. In Count V (headed "Retaliation"), Bonnie alleges that she was discharged because she informed McAnarney of the sensitive documents accessible on the "O" drive. In Count VI (headed "Retaliation Punitive Damages"), Bonnie claims that McAnarney acted with evil intent and callous indifference to her federally protected rights, and thus she is entitled to punitive damages. In Count VII (headed "Intentional Infliction of Mental Distress"), Bonnie claims that McAnarney continuously communicated with her in a way that McAnarney knew or should have known would cause Bonnie greater emotional suffering. In Count VIII (headed "Intentional Infliction of Mental Distress Punitive Damages"), Bonnie alleges that she is entitled to punitive damages because McAnarney acted with evil intent or callous indifference when she continuously communicated with Bonnie in a way that she knew or should have known would cause Bonnie greater emotional suffering.

In Count IX (headed "Intentional Infliction of Tort"), both Bonnie and Roosevelt allege that without provocation, Grigsby and King conspired against them to intimidate and harass them and cause them mental distress

and fear of great bodily harm.  In Count X (headed "Punitive Damages for Mental Distress"), Bonnie and Roosevelt claim that Grigsby and King acted with evil intent and callous indifference to their federally protected rights, and thus they are entitled to punitive damages.

Defendants have filed a number of Motions regarding the Amended Complaint.  First, Defendants filed two separate Motions to Dismiss asking the Court to dismiss Counts IX and X for lack of jurisdiction.  Second, McAnarney filed a Motion to Strike, asking the Court to strike Counts II, IV and VI -- all claims for punitive damages -- on the argument that these claims are essentially duplicative of Counts I, III, and V.

## ANALYSIS

I.   MOTIONS TO DISMISS

Defendants argue that Counts IX and X raise state law claims over which the Court lacks jurisdiction and should not exercise supplemental jurisdiction.  According to the Amended Complaint, this Court has federal question jurisdiction over all of the Plaintiffs' claims under 28 U.S.C. § 1331.[2]  Federal question jurisdiction requires that a case arise under the

---

[2] Plaintiffs actually cite 28 U.S.C. § 331, but the Court assumes this was a typographical error.

9

Constitution, laws, or treaties of the United States. Id. Plaintiffs assert that all of their claims arise under 42 U.S.C. § 1983. The Court agrees that Counts I-VIII at least facially allege claims under § 1983 or the Americans with Disabilities Act, but Plaintiffs label Count IX as "Intentional Infliction of Tort" and Count X as "Punitive Damages for Mental Distress." Amended Complaint, Counts IX and X. Defendants interpret these counts as claims for intentional infliction of emotional distress under Illinois law.

In the Court's view, Counts IX and X fail to state claims for relief under 42 U.S.C. § 1983. This statute "merely provides a method for vindicating federal rights elsewhere conferred." Graham v. Connor, 490 U.S. 386, 394 (1989) (internal quotation marks omitted). To state a claim under § 1983, a plaintiff must allege that: "(1) the conduct complained of was committed by a person acting under color of state law; and (2) the activity deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States." Case v. Milewski, 327 F.3d 564, 566 (7th Cir. 2003). Counts IX and X fail to allege that Grigsby and King were acting under color of state law when they allegedly caused Roosevelt mental distress, so these counts cannot assert claims under § 1983.

In the alternative, Plaintiffs argue that the Court can accept Counts

IX and X as state law tort claims and exercise supplemental jurisdiction over them. Under 28 U.S.C. § 1367, federal courts can exercise supplemental jurisdiction over state law claims that are so related to the accompanying federal claims that they arise from the same case or controversy. The case or controversy from which Counts I-VIII arise is McAnarney's treatment of Bonnie after Bonnie's discovery of the documents on the "O" drive. Counts IX and X arise from King's treatment of Roosevelt, which allegedly was motivated by King's understanding that Roosevelt had threatened Grigsby. Plaintiffs have alleged no connection between Bonnie, McAnarney, or the Office of the Comptroller and King's treatment of Roosevelt. Counts IX and X do not arise from the same case or controversy as Counts I-VIII, and the Court will not exercise supplemental jurisdiction over them. Thus, Counts IX and X are dismissed.

II.   MOTION TO STRIKE

Additionally, McAnarney argues that Counts II, IV, and VI, each claiming punitive damages, are redundant of other counts and should be stricken. Under Federal Rule of Civil Procedure 12(f), the Court may strike "any redundant, immaterial, impertinent, or scandalous matter." Moreover, Rule 8(a)(3) states that a claim "may include relief in the alternative or

11

different types of relief." Counts I, III, and V here set forth Bonnie's substantive claims and pray for "compensatory damage and for all other damages sustained." <u>Amended Complaint</u>, ¶¶ 54, 62, and 69. Essentially, McAnarney argues that Counts II, IV, and VI are redundant of Counts I, III, and V because their claims for punitive damages are encompassed within the claims "for all other damages sustained." <u>Id.</u>

While motions to strike generally are disfavored, courts have discretion to strike portions of pleadings that will confuse and complicate the issues. <u>Talbot v. Robert Matthews Distrib. Co.</u>, 961 F.2d 654, 664-65 (7th Cir. 1992); <u>Heller Fin., Inc. v. Midwhey Powder Co., Inc.</u>, 883 F.2d 1286, 1294 (7th Cir. 1989). Here, the Court finds that the punitive damages counts serve only to clutter the Amended Complaint. McAnarney's argument that these counts are redundant is a concession that Counts I, III, and V suffice to allege punitive damages. <u>See</u> <u>Motion to Strike</u>, at 2. Thus, the Court sees no need for Counts II, IV, and VI and strikes them.

THEREFORE, Defendants McAnarney's and Grigsby's Motion to Dismiss (d/e 10); Defendant King's Motion to Dismiss Counts IX and X of Plaintiffs' Amended Complaint (d/e 14); and Defendant McAnarney's

Motion to Strike (d/e 12) are ALLOWED. Counts IX and X are dismissed, and Counts II, IV, and VI are stricken. This matter is referred to the Magistrate for scheduling.

IT IS THEREFORE SO ORDERED.

ENTER: April 24, 2009

    FOR THE COURT:

                              s/ Jeanne E. Scott
                              JEANNE E. SCOTT
                              UNITED STATES DISTRICT JUDGE