E-FILED
Friday, 25 June, 2010  02:31:16 PM
Clerk, U.S. District Court, ILCD

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF ILLINOIS
### SPRINGFIELD DIVISION

| | | |
|---|---|---|
| BONNIE PRATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  08-3144 |
| | ) | |
| JUDY McANARNEY, | ) | |
| | ) | |
| Defendant. | ) | |

## <u>OPINION</u>

JEANNE E. SCOTT, U.S. District Judge:

This cause is before the Court on Defendant Judy McAnarney's Motion for Summary Judgment (Motion) (d/e 42) and Memorandum of Law in Support of Motion for Summary Judgment (Memorandum) (d/e 43). Plaintiff Bonnie Pratt has filed Plaintiff's Response to Defendant's Motion for Summary Judgment (Response) (d/e 48) and a second Plaintiffs' [sic] Response to Defendant's Motion for Summary Judgment (d/e 51).[1] Defendant then filed her Reply to Plaintiff's Response to Defendant's Motion for Summary Judgment (Reply) (d/e 52).

This matter is fully briefed and ripe for adjudication.  For the reasons

---

[1]As discussed below, Roosevelt Pratt is no longer a party to this action.

described below, Defendant's Motion is granted.

## APPLICABLE LAW

A motion for summary judgment must be granted "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c)(2); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Any doubt as to the existence of a genuine issue for trial is resolved against the moving party. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Herman v. Nat'l Broadcasting Co., 744 F.2d 604, 607 (7th Cir. 1984). Once the moving party has produced evidence showing that it is entitled to summary judgment, the non-moving party must present evidence to show that issues of fact remain. Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). A court properly enters summary judgment "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see McKenzie v. Ill. Dept. of Transportation, 92 F.3d 473, 479 (7th Cir. 1996) (quoting Celotex).

To successfully oppose a motion for summary judgment, the non-movant must present "specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2); Zenith, 475 U.S. at 587 (emphasis omitted). There is not a genuine issue for trial if "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party . . . ." Zenith, 475 U.S. at 587. Failure to respond to a moving party's statement of facts is deemed an admission of those facts. Waldridge v. Am. Hoechst Corp., 24 F.3d 918, 922 (7th Cir. 1994); CDIL-LR 7.1(D)(2)(b)(6); see Senske v. Sybase, Inc., 588 F.3d 501, 503 n.1 (7th Cir. 2009).

## FACTS

Under this District's Local Rules, a response to a motion for summary judgment must contain separate subsections addressing which facts in the motion for summary judgment are undisputed, which facts are disputed, and which facts are immaterial. CDIL-LR 7.1(D)(2)(b)(1)-(4). "A failure to respond to any numbered fact will be deemed an admission of the fact." CDIL-LR 7.1(D)(2)(b)(6). Plaintiff did not comply with this Rule because she failed to identify which of the facts in Defendant's Motion were disputed, undisputed, or immaterial. Additionally, while Plaintiff supplied a statement of additional material facts, she did not support these facts with

citations to evidence.  Under this District's Local Rules, "[e]ach additional fact must be supported by evidentiary documentation referenced by specific page."  CDIL-LR 7.1(D)(2)(b)(5).  Therefore, the Court deems admitted all of the facts in Defendant's Motion, and will not consider Plaintiff's statement of additional material facts.  See Waldridge, 24 F.3d at 922 ("We have also repeatedly upheld the strict enforcement of [local rules], sustaining the entry of summary judgment when the non-movant has failed to submit a factual statement in the form called for by the pertinent rule and thereby conceded the movant's version of the facts.").

Plaintiff Bonnie Pratt began working for the Illinois Office of the Comptroller (Comptroller's Office or Office) on June 1, 1998, as a temporary, or intermittent, employee.  She became a full-time employee on February 1, 2000, and worked in the Vendor Unit (Unit) as an office assistant until April 16, 2000, when she was promoted to office associate.  Plaintiff's supervisor was Karla Grigsby.  Defendant is the Comptroller's Office's Director of human resources, and has held that position since August 2005.

The Comptroller's Office's computer system contains various drives.  For example, each employee's computer contains a C drive, which is a

personal, local drive housing documents that are accessible only by their author.  The J drive is a unit-wide drive containing documents that are shared among all employees in a particular unit.  The O drive contains documents that are shared by all employees of the Comptroller's Office.

In the late months of 2006, Plaintiff was discussing the Unit with a co-worker, Alice Kern.  Kern asked Plaintiff about a co-worker, Rabindra (Rabin) Fozdar, who was of Indian descent, spoke English with an accent, and had a hearing disability.  Plaintiff believed that the Unit was being "punished" because Fozdar was part of the Unit.  <u>Memorandum</u>, Attachment 1 (d/e 43-1), <u>Deposition of Bonnie Pratt (Pratt Depo.)</u>, 23:12-19.  Plaintiff testified that Fozdar spoke loudly on his cell phone during work hours, sneezed and coughed without covering his mouth, and intruded into his co-workers' work space.  <u>Pratt Depo</u>, 25:10-20.  Plaintiff did not like Fozdar, and, according to Defendant, had sent "a constant barrage of emails complaining about [him]" to Grigsby, human resources personnel, and the union.  <u>Memorandum</u>, Ex. 3 (d/e 43-3, p. 6-10 of 14), <u>Memorandum/Oral Warning to Bonnie Pratt (Oral Warning)</u>, p. 4.  Kern told Plaintiff that she had "found a complaint that [Fozdar had] written about another supervisor on the O drive, and perhaps, if you were to read

that, you might have more compassion for him." <u>Pratt Depo</u>, 23:5-9.

At that time, Plaintiff did not tell Fozdar that one of his personal documents may have been stored on the O drive, which anybody in the Office could access. Nor did Plaintiff look for the document herself until February 20, 2007. On that date, Plaintiff began to search for the document Kern had referenced, to no avail. However, Plaintiff located a document authored by Bill Mansfield, a former employee, and directed to all supervisors in the Comptroller's Office. Pratt, realizing the document was personal, closed the file after reading the first paragraph. She believed that such documents should not be stored on the O drive. Plaintiff also discovered a "benign" document authored by Don Templeman, an Assistant Director of the Comptroller's Office, directed to the Comptroller. <u>Pratt Depo.</u>, 30:15-18. Finally, Plaintiff located a document named "Kathy Strubbe," but her attempts to open the file were unsuccessful.

That same afternoon, at 4:07 p.m., Plaintiff emailed Defendant, complaining about how personal and confidential information about Comptroller's Office employees was accessible on the O drive. Plaintiff stated that a personal memorandum she had written was on the O drive, in addition to the Mansfield Memorandum. <u>Memorandum</u>, Ex. 2 (d/e 43-3,

p. 5 of 14), <u>Email to Judy McAnarney from Bonnie Pratt</u>.  Pratt did not raise these concerns with Grigsby, her immediate supervisor, at this time because Grigsby was gone for the day.

At approximately 4:30 p.m., Defendant, whose office was on the first floor, came up to Plaintiff's desk, which was on the second floor, after Defendant's telephone calls to Plaintiff went unanswered.  Defendant asked Plaintiff to show her the documents Plaintiff referenced in her email. Defendant stated that she was concerned that personal, confidential information was accessible by any employee in the Comptroller's Office, and wanted to make sure that she removed any such information from the O drive immediately.  <u>Memorandum</u>, Ex. 1 (d/e 43-3, p. 1-4 of 14), <u>Affidavit of Judy McAnarney (McAnarney Affidavit)</u>, ¶¶ 13, 20.

Plaintiff tried to show Defendant the files she referenced in the email, but could not find them on the O drive.  Plaintiff testified that Defendant called her a "game player," and that Defendant said that Plaintiff was out to get "[p]oor Rabin."  <u>Pratt Depo.</u>, 34:19-23.  Plaintiff responded, "Oh, poor Rabin.  That's bullshit."  <u>Pratt Depo.</u>, 35: 4-5.  Defendant told Plaintiff that any further discussions would have to take place in Defendant's office.  Plaintiff followed Defendant to the elevator, indicating

that she wanted to respond to the allegation that she was a "game player." However, rather than going to Defendant's office, Plaintiff went home, since her work day ended at 4:30 p.m.

The following day, Miguel Calderon, the Comptroller's Office's equal employment opportunity officer, and John Dill, the Office's labor liaison, contacted Plaintiff. Calderon called Plaintiff and asked her to describe where she had found the documents referenced in her email to McAnarney. When he was unable to find them using Plaintiff's instructions, both he and Dill went to Plaintiff's work station so that she could show them where the documents were. Dill found Plaintiff's personal document, but it was not on the O drive; instead, the document was on her C drive, which could only be accessed with a password. Plaintiff showed Calderon and Dill the Mansfield Memorandum, but was unable to find any other potentially personal or confidential document on the O drive.

Plaintiff then asked Calderon and Dill about the Fozdar document, which she had never seen and was not even sure was on the O drive. They told her that the matter needed to be discussed downstairs in the human resources office. Plaintiff went downstairs with Calderon and Dill, and was represented by Clarence Williams, her union representative, at the meeting.

Plaintiff continued to insist that personal and confidential documents were stored on the O drive, despite the fact that she had only seen one potentially confidential document, and had been unable to produce any others to her superiors.   Plaintiff told Calderon and Dill that several employees had told her that personal and confidential documents were on the O drive, and that it was common knowledge in the office that this was the case.   During the course of the investigation, Plaintiff asked Rhonda Cameron, a co-worker, whether she knew anything about personal documents being on the O drive; Cameron said that she had no knowledge of that.

This impasse continued for several days.   Plaintiff had no fewer than three meetings with her superiors, who questioned Plaintiff about the source of her allegation that there was a personal document authored by Fozdar on the O drive.   Plaintiff would not reveal her source, but again said that she had heard for years that there were personal documents on the O drive. Defendant and Williams repeatedly warned Plaintiff that refusing to identify her source constituted insubordination and could result in her termination.   Plaintiff finally revealed that Kern had told her about the Fozdar Memorandum.

Defendant, Calderon, and Dill investigated Plaintiff's allegations for eight days. Plaintiff's refusal to cooperate resulted in the investigation consuming more time and resources than it should have. On March 8, 2007, Plaintiff was given an oral warning, which, under Comptroller's Office rules, was in writing. An oral warning is the least severe type of punishment issued by the Comptroller's Office. Plaintiff was disciplined for insubordination, misrepresenting facts, displaying confidential documents to co-workers, attempting to intimidate a co-worker, creating anxiety in the workplace about the confidentiality of personal documents, misusing office time, and defaming a co-worker's reputation. Oral Warning.

Plaintiff responded in writing to the Oral Warning on March 8, 2007. Also on March 8, 2007, Plaintiff made an appointment to see a psychiatrist on March 9, 2007, and arranged to use sick leave on March 9, 2007. Pratt Depo., 92:24-94:1. Plaintiff returned to work on March 12, 2007, but claims to have had an anxiety attack while at the office. On March 16, 2007, Plaintiff bid for two intermittent, or part-time, positions with the Comptroller's Office, so that she could reduce her hours and help her husband run the clothing store he operated in Springfield, Illinois. Defendant contacted Plaintiff on March 28, 2007, and asked her whether

she would accept the two positions.  Plaintiff declined.

From March 26, 2007, until April 15, 2007, Plaintiff took a leave of absence, pursuant to instructions from her doctor.  She was prescribed several medications to help her deal with depression and anxiety.  Plaintiff returned to the Comptroller's Office on April 15, 2007, intending to work half days as authorized by her doctor.  Grigsby performed an evaluation of Plaintiff's work performance that day, and told Plaintiff that she needed to spend more time with her co-workers.  Plaintiff completed her shift, but did not return to work the following day because she was upset.  Plaintiff's doctor faxed a note to the Comptroller's Office's human resources department indicating that Plaintiff was not ready to return to work.

Plaintiff never came back to work at the Comptroller's Office.  On July 6, 2007, Defendant notified Plaintiff that she had exhausted all of her leave time, and that she was being terminated for job abandonment.  Memorandum, Ex. 6 (d/e 43-3, p. 13-14 of 14), July 6, 2007, Letter to Pratt from McAnarney (Termination Letter).  Human resources personnel warned Pratt on June 20, 2007, and on June 29, 2007, that her leave was about to expire, and that she would be terminated if she did not return to work. Termination Letter.

11

On July 3, 2008, Bonnie Pratt and her husband, Roosevelt Pratt, filed their ten-Count Complaint against Defendant, Karla Grigsby, and Jerome Grigsby.  Complaint (d/e 1).[2]  Count I, brought pursuant to 42 U.S.C. § 1983, alleged violations of Bonnie Pratt's First Amendment rights,[3] and Count II requested punitive damages for the violations alleged in Count I. Bonnie Pratt brought Count III under the Americans with Disabilities Act of 1990 (ADA), 42 U.S.C. § 12123, claiming that Defendant both discriminated against Pratt because of her severe depression and failed to accommodate Pratt's severe depression.  Count IV sought punitive damages for the ADA violations alleged in Count III.  Count V was a claim for retaliation under the Illinois Whistleblower Law, 740 ILCS 174, with Count VI seeking punitive damages for the retaliation.  In Count VII, Bonnie Pratt sought damages for intentional infliction of emotional distress, and in Count VIII she sought punitive damages in connection with her intentional infliction of emotional distress claim.

---

[2]The Court does not address the allegations or circumstances surrounding the allegations involving Roosevelt Pratt because those claims have been dismissed, and Roosevelt Pratt is no longer a party to this action.  See Opinion of April 24, 2009 (d/e 30).

[3]In the Response, Plaintiff makes references to a due process claim.  See Response, p. 10.  However, Plaintiff does not have a due process claim pending before the Court, and therefore the Court disregards Plaintiff's references to any such claim.

Plaintiffs then filed their Amended Complaint (d/e 4).  On April 24, 2009, the Court struck Counts II, IV, and VI of the Amended Complaint as redundant.  <u>Opinion of April 24, 2009</u>.  The Court also dismissed all claims against Grigsby and King; this dismissal terminated all of Roosevelt Pratt's claims.  At the completion of discovery, Defendant filed the Motion now before the Court.

<u>ANALYSIS</u>

I.   <u>ADA CLAIM</u>

Defendant argues that she is entitled to summary judgment on Plaintiff's ADA claim because Plaintiff was not disabled for purposes of the ADA.  Defendant also argues that Plaintiff's ADA claim against Defendant is improper because Defendant does not meet the ADA's definition of an "employer."  <u>See</u> 42 U.S.C. § 12111(a)(5).  Plaintiff states in her Response that she does "not respond to Defendant's argument" regarding the ADA claim.  <u>Response</u>, p. 18.

Under this District's Local Rules, failure to respond to a motion for summary judgment "will be deemed an admission of the motion."  <u>CDIL-LR</u> 7.1(D)(2).  Plaintiff elected not to respond to Defendant's arguments about the ADA claim, and the Court treats this failure to respond as an admission.

Accordingly, the Court grants Defendant summary judgment on the ADA claims contained in Count I of the Amended Complaint.

II.  INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS & SOVEREIGN IMMUNITY

Defendant next argues that she is entitled to sovereign immunity from suit for Plaintiff's intentional infliction of emotional distress claim and, in the alternative, that Plaintiff's intentional infliction of emotional distress claim fails as a matter of law.

The Illinois Constitution of 1970 abolished sovereign immunity in the State of Illinois unless otherwise provided by the Illinois General Assembly. ILL. CONST. Art. XIII, § 4.  In 1971, the Illinois General Assembly passed the State Lawsuit Immunity Act, 745 ILCS 5/0.01 et seq.  Amended in 2008, the Act says that, with certain delineated exceptions, "the State of Illinois shall not be made a defendant or party in any court."  745 ILCS 5/1 (West 2010).  None of the Act's exceptions is relevant to the case at bar.

In addition to barring suits against a state itself, the doctrine of sovereign immunity "applies in an action naming a State employee as defendant where the impact on the State makes it, for all practical purposes, a suit against the State."  Welch v. Ill. Supreme Ct., 751 N.E.2d 1187, 1192

(Ill.App. 3d Dist. 2001).  A state actor is entitled to sovereign immunity if three things are true:

> there are (1) no allegations that an agent or employee of the State acted beyond the scope of his authority through wrongful acts; (2) the duty alleged to have been breached was not owed to the public generally independent of the fact of State employment; and (3) where the complained-of actions involve matters ordinarily within that employee's normal and official functions of the State, then the cause of action is only nominally against the employee.

Robb v. Sutton, 498 N.E.2d 267, 272 (Ill.App. 4th Dist. 1986); see Healy v. Vaupel, 549 N.E.2d 1240, 1247 (Ill. 1990).  To demonstrate that the defendant's actions were outside the scope of state employment, the plaintiff must produce evidence showing that the defendant acted based on personal animosity, instead of in the employer's best interest.  Welch, 751 N.E.2d at 1195; Mgmt. Ass'n of Ill. v. Bd. of Regents of Northern Ill. University, 618 N.E.2d 694, 616-17 (Ill.App. 3d Dist. 1993); Nikelly v. Stubing, 562 N.E.2d 360, 364 (Ill.App. 4th Dist. 1990).

In this case, Defendant is entitled to sovereign immunity.  Plaintiff sued Defendant in her official capacity, meaning that the State of Illinois could be subjected to liability on Plaintiff's claim.  See Welch, 751 N.E.2d at 1193.  However, there is no evidence that Defendant acted beyond the

scope of her authority as human resources director for the Comptroller's Office. Defendant responded to Plaintiff's allegations that inappropriate information was accessible on the Office's O drive by conducting an immediate investigation. Defendant stated that she "was concerned that [her office] had accidentally and erroneously placed some personal or confidential documents on the 'O drive' and wanted the matter corrected as soon as possible, if a mistake had been made." McAnarney Affidavit, ¶ 20. These actions and motivations were in line with Defendant's responsibilities as the head of human resources. Additionally, Defendant's decision to discipline Plaintiff for insubordination and other infractions of Comptroller's Office policy was part of her job responsibilities as an employee of the State of Illinois. Sovereign immunity insulates Defendant from Plaintiff's intentional infliction of emotional distress tort claim.

Furthermore, even if Defendant was not entitled to sovereign immunity, she would still be entitled to summary judgment on Plaintiff's intentional infliction of emotional distress claim. Under Illinois law, a plaintiff suing for intentional infliction of emotional distress must demonstrate that: (1) the defendant's behavior was "truly extreme and outrageous"; (2) the defendant intended to cause severe emotional distress

or at least knew that there was a "high probability" that his behavior would do so; and (3) the plaintiff suffered severe emotional distress. McGrath v. Fahey, 533 N.E.2d 806, 809 (Ill. 1988); see Honaker v. Smith, 256 F.3d 477, 490 (7th Cir. 2001) (citing McGrath). The tort is designed to protect victims "only where the distress inflicted is so severe that no reasonable man could be expected to endure it." RESTATEMENT (SECOND) OF TORTS § 46 cmt. j (West 2010). "[M]ere insults, indignities, threats, annoyances, petty oppressions, or other trivialities" do not give rise to an intentional infliction of emotional distress claim; instead, the conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (West 2010); see Dunn v. City of Elgin, 347 F.3d 641, 651 (7th Cir. 2003).

In this case, the evidence before the Court fails to establish that Defendant's conduct was "truly extreme and outrageous." See McGrath, 533 N.E.2d at 809. Plaintiff's contention that "she was subjected to a brutal interrogation which occurred over four days" is wholly unsupported by the evidence. See Response, p. 17. Instead, the facts show that Plaintiff initiated an investigation into the Comptroller's Office's O drive and then

impeded that investigation's progress. There is nothing "extreme or outrageous" about Defendant investigating Plaintiff's claims, requesting Plaintiff's cooperation in the investigation, and then disciplining Plaintiff when, due to her insubordination, the investigation ended up taking several days longer than it should have and revealed that Plaintiff's allegations were untruthful. The undisputed facts show that Defendant's conduct was in no way, shape, or form "atrocious," "extreme," or "intolerable." <u>See</u> RESTATEMENT (SECOND) OF TORTS § 46 cmt. d (West 2010).

Therefore, the Court awards Defendant summary judgment on Plaintiff's intentional infliction of emotional distress claim.

III.   <u>WHISTLEBLOWER CLAIM</u>

Defendant moves for summary judgment on Plaintiff's claim under Illinois's Whistleblower Act,[4] arguing that she is not a proper Defendant under the Act, and that Plaintiff's claim has no merit.

The Act prohibits an employer from retaliating against an employee who discloses "information to a government or law enforcement agency,

---

[4]In the Amended Complaint, Plaintiff references "28 U.S.C. § 215(a)(3)" as a federal statutory basis for her retaliation claim. The only provision of law the Court could locate using this citation governed how many judges constituted a quorum on the Court of Customs and Patent Appeals; the provision was repealed in 1982.

where the employee has reasonable cause to believe that the information discloses a violation of a State or federal law, rule, or regulation." 740 ILCS 174/15(b).  An "employer" under the Act is, among other things, "any person acting within the scope of his or her authority express or implied on behalf of" the official employer.  740 ILCS 174/5.

Defendant's argument that she is not an "employer" under the Act is erroneous, but Plaintiff's claim still fails because there is no evidence that she was the victim of a retaliatory discharge.  In the Amended Complaint, Plaintiff alleges that Defendant terminated Plaintiff for initiating the investigation into the O drive.  <u>Amended Complaint</u>, ¶ 67.  However, the undisputed evidence before the Court demonstrates that Plaintiff was terminated from her position because she did not return to work after exhausting all of her leave time.  <u>Termination Letter</u>.  Defendant terminated Plaintiff because Plaintiff abandoned her position, not because Plaintiff reported that allegedly confidential documents were stored on the O drive.

Based on the foregoing, the Court awards Defendant summary judgment on Plaintiff's claim under the Illinois's Whistleblower Act.

IV.   <u>FIRST AMENDMENT CLAIM AND QUALIFIED IMMUNITY</u>

Defendant argues that Plaintiff's claim that Defendant fired Plaintiff

in retaliation for exercising her First Amendment rights is meritless, and, in the alternative, that she is entitled to the affirmative defense of qualified immunity on Plaintiff's First Amendment claim.

A three-part test governs whether a plaintiff-employee has a First Amendment retaliation claim in the public employment context. <u>Sullivan v. Ramirez</u>, 360 F.3d 692, 697 (7th Cir. 2004). First, the court decides whether the plaintiff engaged in constitutionally protected speech as defined by the <u>Connick</u>-<u>Pickering</u> test. Next, the plaintiff must show that "the speech was a substantial or motivating factor in the retaliatory action." <u>Id.</u> Finally, the defendant has the chance to show that she would have taken the same action "in the absence of the employee's protected speech." <u>Id.</u>

The <u>Connick</u>-<u>Pickering</u> test determines whether a public employee's speech is constitutionally protected, and this determination is "a question of law for the court." <u>Id.</u> at 698; <u>Kokkinis v. Ivkovich</u>, 185 F.3d 840, 843 (7th Cir. 1999). The test is named for a duo of U.S. Supreme Court cases. <u>See</u> <u>Connick v. Myers</u>, 461 U.S. 138 (1983); <u>Pickering v. Bd. of Education of Twp. High School Dist. 205</u>, 391 U.S. 563 (1968). First, the court determines whether, under <u>Connick</u>, the plaintiff's speech was made as a citizen about a matter of public concern. <u>Sullivan</u>, 360 F.3d at 698. If the

20

court determines that the plaintiff's speech did involve a matter of public concern, it turns to the <u>Pickering</u> balancing test and weighs "whether the government's interest as an employer in providing effective and efficient services outweighs the employee's interest as a citizen in commenting upon the matter of public concern." <u>Sullivan</u>, 360 F.3d at 698; <u>see</u> <u>Sigsworth v. City of Aurora, Ill.</u>, 487 F.3d 506, 509 (7th Cir. 2007).

Turning to the first prong of the <u>Connick</u>-<u>Pickering</u> test, the U.S. Court of Appeals for the Seventh Circuit has stated that "[s]peech by a government employee relating to ordinary matters of internal operation and lacking connection to 'any matter of political, social, or other concern to the community' is not entitled to First Amendment protection." <u>Spiegla v. Hull</u>, 371 F.3d 928, 936 (7th Cir. 2004)(quoting <u>Connick</u>, 461 U.S. at 146); <u>see</u> <u>Schad v. Jones</u>, 415 F.3d 671, 674 (7th Cir. 2005). "[T]he First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." <u>Connick</u>, 461 U.S. at 149; <u>see</u> <u>Kuchenreuther v. City of Milwaukee</u>, 221 F.3d 967, 974-75 (7th Cir. 2000).

Here, Plaintiff's First Amendment retaliation claim fails as a matter of law because she cannot satisfy the first prong of the <u>Connick</u>-<u>Pickering</u> test.

Plaintiff's allegations about the contents of the Comptroller's Office's O drive related to intra-office affairs and policies, not matters of political or social concern to the community as a whole. The facts before the Court do not establish that Plaintiff's complaints to Defendant involved a matter of public concern, and Plaintiff has not supplied the Court with facts or argumentation demonstrating that this was, in fact, the case.

Defendant is entitled to summary judgment on Plaintiff's First Amendment retaliation claim. Given this outcome, the Court need not address Defendant's qualified immunity argument.

<u>CONCLUSION</u>

THEREFORE, Defendant Judy McAnarney's Motion for Summary Judgment (d/e 42) is ALLOWED. The Court awards summary judgment in favor of Defendant Judy McAnarney and against Plaintiff Bonnie Pratt on all claims in the Amended Complaint (d/e 4). All pending motions are DENIED as MOOT. This case is closed.

IT IS THEREFORE SO ORDERED.

ENTER: June 25, 2010

FOR THE COURT:

s/ Jeanne E. Scott
JEANNE E. SCOTT
UNITED STATES DISTRICT JUDGE

22